**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| CATHY T. BROOKS, | * | |
| | * | |
| Claimant, | * | |
| | * | |
| vs. | * | CASE NO. 5:05-CV-97 (GMF) |
| | * | |
| JO ANNE B. BARNHART, | * | |
| COMMISSIONER OF | * | |
| SOCIAL SECURITY, | * | |
| | * | |
| Defendant. | * | SOCIAL SECURITY APPEAL |

_____

**ORDER**

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted. Both parties have filed their written consents for all proceedings to be conducted by the United States Magistrate Judge, including the entry of a final judgment directly appealable to the Eleventh Circuit Court of Appeals pursuant to 28 U.S.C. § 636(c)(3).

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court may not decide facts, re-weigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations promulgated pursuant to the authority given in the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

**I.        Whether the ALJ applied proper legal standards in discounting the opinion of a treating psychologist?**

**II.       Whether the ALJ properly considered the combined effect of all of Claimant's impairments?**

### Administrative Proceedings

Claimant protectively filed an application for social security disability insurance benefits on August 17, 2000. (Claimant's Brief, p. 3). Her application for benefits was denied initially and upon reconsideration. Claimant then requested a hearing which was held on February 26, 2002. The ALJ denied Plaintiff's claim on June 28, 2002. Claimant then requested review of the ALJ's decision by the Appeals Council. Thereafter, on January 14, 2005, the Council issued an order denying review, making it the final decision of the Commissioner.

### Statement of Facts and Evidence

Claimant alleges that she is disabled and entitled to benefits due to a seizure disorder, depression, fibromyalgia, a cognitive disorder, hypothyroidism (post cancer therapy), osteoarthritis (cervical spine, hips and knees), fatigue, confusion, memory loss, and an inability to concentrate. (R-14). Subsequent to the hearing, the ALJ found that the Claimant had severe impairments but that she was able to perform light exertional work with some limitations. (R-27).

**I.      Whether the ALJ applied proper legal standards in discounting the opinion of a treating psychologist?**

In her Brief, Claimant argues that the ALJ improperly discredited the opinion of Claimant's treating psychologist, Dr. Connally, and that the hypothetical posed to the vocational expert was therefore incomplete and that because of said discrediting, the findings as a whole were not supported by substantial evidence. (Claimant's Brief, p. 10).

It is well settled that the opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding it. *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985). A treating physician's report may be discounted when it is not accompanied by objective medical evidence or when it is conclusory. *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). The ALJ can also reject the opinion of any physician when the evidence supports a contrary conclusion or when it is contrary to other statements or reports of the physician. *Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991). *See also Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984).

In the case at bar, the ALJ provided good cause for rejecting Dr. Connally's opinion. The ALJ found that Dr. Connally's assessment was conclusory and not supported by objective medical evidence, stating:

> I have considered the Medical Assessment of Ability to Do Work Related Activities form completed by Dr. Connally on February 15, 2002. To the extent that Dr. Connally comments concerning the claimant's physical disorders, I have given her comments little weight, as she is a psychologist rather than a physician. Furthermore, her conclusions regarding limitations

> the claimant may experience are not supported by her clinical notes and are also inconsistent with the results of the neuropsychological testing performed by Dr. Loring at the Medical College of Georgia.

*Id.* Dr. Connally's assessment that Claimant's physical limitations/conditions render her disabled, is contradicted by the treatment notes and medical records of the physicians who actually treated Claimant for said conditions. As cited by the ALJ, on November 1, 2001, Claimant told Dr. Carr, who treats her for hypertension and prescribes her psychotropic medications, that her seizures had elevated to grand-mal level but that she was much less depressed. (R-469). However, there is no objective medical evidence in the record to indicate that Claimant is definitely having seizures, much less of the severity of a grand mal seizure. (R-344-351). All alleged seizure activity was simply reported by Claimant. On March 28, 2000, at her cancer screening/prevention clinic, Claimant denied depression or fatigue to Dr. Elise Cook at the W.D. Anderson Cancer Center. (R-252-253). The next day, at her endocrine clinic, Claimant tells Dr. Sherman that she is easily fatigued. (R-250). Additionally, the ALJ cites numerous accounts in the record where Claimant herself contradicts Dr. Connally's assessment of total disability due to depression, "anxiety and a decreased ability to cope with stress." (R-510). One example occurred on May 23, 2000, Claimant told Dr. Bashinski that she "has some days that are quite good" and denied depression. (R-361). Dr. Bashinski further noted that Claimant discussed going back to work, gave a goal directed history, did not have disturbed speech and had no trouble with comprehension. *Id.* That same day, Claimant met with Dr. Carr, to whom Claimant told that

6

her memory loss was much worse, to the point that she could no longer work, that she was depressed over her memory loss, and Claimant cried in Dr. Carr's office. (R-382). Because these symptoms and conditions were not supported by objective medical evidence, but rather were all reports of Claimant, whom the ALJ found was not credible, the ALJ found "that her medical records fail to establish the significant impact the effect her impairments and associated pain should have on her functional abilities." (R-23, 26)

Dr. Connally's opinions relative to the severity and limiting effects of the Claimant's impairments were, therefore, found to be conclusory and are not fully supported by objective medical facts and clinical findings, as reflected in the conflicting treatment notes concerning examinations of the claimant during the relevant time period.

Although the claimant argues to the contrary, the ALJ clearly supported her credibility assessment of Dr. Connally in her Findings. As was recently held in this circuit in *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir. 2005):

> Substantial evidence is something "more than a mere scintilla, but less than a preponderance." *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.1987) "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir.2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.] 357 F.3d at 1240 n. 8.

Plaintiff further claims that because the ALJ improperly discredited Claimant's treating psychologist, the ALJ did not pose a complete hypothetical to the vocational expert. It is the law of this circuit that hypothetical questions posed to a vocational expert must

contain adequate assumptions or the answers given cannot constitute substantial evidence of ability to engage in substantial gainful activity. *Stubbs v. Mathews*, 544 F.2d 1251, 1256-57 (5th Cir. 1977). *See also Freeman v. Schweiker*, 681 F.2d 727, 730 (11th Cir. 1982); *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980). Taken further, hypothetical questions posed to vocational experts by ALJs must set out precisely the claimant's particular physical and mental impairments. *Taylor v. Sullivan*, 951 F.2d 878, 882 (8th Cir. 1991). *See also Kosman v. Shalala , 1993 U.S. App. LEXIS 9108 (9th Cir.).* In addition, a hypothetical need only contain a claimant's credible limitations. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998). There was no credible medical evidence, that Claimant was totally disabled by her physical limitations nor her depression, anxiety, nor any limitations as to her cognitive functions. "No symptom or combination of symptoms[2] can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the symptoms." SSR 96-7p (effective 7/2/96) "Assessing The Credibility Of An Individual's Statements"; *see also, Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Other circuits have held, and this court believes common sense dictates, that an ALJ is not required to include in his hypothetical questions to the vocational expert, limitations that he does not accept as true. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994); *Talley v. Sullivan*,

---

[2] A symptom is an individual's own description of his physical or mental impairments.

8

908 F.2d 585, 588 (10th Cir. 1990); *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988). The ALJ found Dr. Connally's assessment of Claimant was not supported by medical evidence and was, in fact, inconsistent with the medical records in evidence.

At the hearing, the vocational expert (VE) testified that Claimant's past relevant work as a Respiratory Care Technician/Cardiopulmonary Technician was "semi-skilled work performed at a medium exertional capacity, and with transferable work skills." (R-24). However, given Claimant's residual functional capacity, including her non-exertional limitations, the VE testified that Claimant could not perform her past relevant work. (R-25). In accordance, the ALJ found that "the vocational evidence contained in the claimant's record and the information provided in the Dictionary of Occupational Titles comports with the vocational expert's testimony, the vocational expert's testimony is reliable, and supports my conclusion that claimant does not retain the [RFC] to perform past relevant work." *Id*. Once the Claimant establishes that she can no longer perform past relevant work, the burden shifts to the Commissioner to produce evidence that there is alternate employment available in significant numbers in the national economy that claimant has the capacity to perform. 20 C.F.R. §§ 404.920(f)(1), 404. 1512(a). To thereafter be found disabled, the Claimant must then show that she is unable to perform jobs that the ALJ lists. *Id.*

As stated above, based on the assessed residual functional capacity, the ALJ found that several of the Claimant's impairments were severe. Therefore, the burden shifts to her to determine if there are other jobs in this economy that would enable the Claimant to engage

in gainful employment. The ALJ, after determining that the Claimant had the RFC to engage in light work, with specific limitations, and had a Vocational Expert testify as to whether jobs would exist for an individual with this Claimant's education, limitations, work experience and age. (R-25-26). The VE's testimony reflected that there were several jobs that a person with this Claimant's limitations could perform in this economy. (R-26). As the Claimant did not thereafter present medical evidence to the ALJ which proved that she was unable to perform the listed jobs, the ALJ found that this Claimant was not disabled.

The ALJ based her decision on the evidence of record, including the claimant's treating sources, medical records in evidence, the assessments and evaluations of state agency consultants, as well as the claims of pain and limitations as subjectively alleged by the Claimant which, based on the medical evidence of record, the ALJ found less than fully credible. (R-26). After reviewing the record, this Court finds no error in the ALJ's finding that the Claimant had the RFC to perform light exertional works, limited to simple, repetitive, routine, low stress, non-hazardous work and finds further that the decision of the ALJ as to credibility is supported by substantial evidence.

## II.     Whether the ALJ properly considered the combined effect of all of Claimant's impairments?

In her second enumerated issue, Claimant argues that the ALJ failed to properly evaluate the cumulative effects her hypothyroidism and post-cancer therapy had on her ability to work. (Plaintiff's Brief, p. 13). The ALJ found that neither Claimant's alleged post cancer

therapy or hypothyroidism were severe. [3] (R-17). The ALJ found that these alleged impairments:

> (1) have not met the durational requirement or [are] episodic in nature; or (2) have not been substantiated by any objective medical evidence and/or diagnostic laboratory techniques; or (3) are corrected or controlled by medication, treatment, surgery or diet. The claimant's medical records show that surgery, therapy/treatment, and medication have controlled and stabilized her hypothyroidism. (Exhibits 1F/1-114 and 14F/35).

(R-17). After her complete thyroidectomy at the University of Texas, M.D. Anderson Cancer Center, Claimant was diagnosed as hypothyroid and began receiving hormone replacements in April of 1998. (R-290). On March 29, 2000, hypothyroidism appeared again in the medical records for the first time since 1998. (R-250). Claimant had been taking hormone replacement for her thyroid since surgery and Tamoxifen, for chemo-prevention since October 27, 1999, without apparent complaint. (R-290, 255). However, at this appointment, Claimant complained of numerous signs of hypothyroidsim, including fatigue and difficulty concentrating. *Id*. Dr. Steven Sherman indicated that Claimant was significantly hypothyroid at the time and stated that this change was likely due to the introduction of Tegretol into Claimant's regiment, "as this medication along with other antiseizure drugs, is known to accelerate thyroid hormone clearance." *Id*. As a result, Claimant's dose of thyroid hormone was increased to 0.225 mg daily. *Id*. Seven months later, on October 31, 2000, Claimant denies fatigue and does not complain of any symptoms

---

[3] The ALJ also found Claimant's alleged fibromyalgia was not a severe impairment, noting that none of Claimant's physician's had diagnosed her with said impairment. (R-17).

that the doctor contributes to hypothyroidism, nor the chemo-prevention. (R-244). In December 2000, after her TSH results were received, Claimant's thyroid medicine, Synthoid, was increased to 0.250. (R-521). Claimant's primary care physician increased her Synthoid does to 0.375 mg in February 2001, however, a month later Dr. Sherman reduced said dose to 0.300 mg. (R-522). At this appointment, Claimant complained of seizures and ischemia, the reduction was suggested by Dr. Sherman in hopes that said reduction might make Claimant less susceptible to said complaints. *Id.* Notably, from the record, Claimant appears to exaggerate her illnesses to her non-diagnosing doctors.[4] Furthermore, in the hearing before the ALJ on February 26, 2002, Claimant denied having any further trouble with her thyroid. (R-580). Thus, the ALJ held that:

> [B]ecause the claimant's hypothyroidism is controlled by treatment, medication and surgery, I find that it has less than a minimal effect upon the claimant's ability to perform work-related functions, and consequently, is "non-severe" within the regulatory definition (20 C.F.R. § 404.1529(d)(3) and Social Security Ruling 96-3p).

(R-18).[5]

---

[4] For example, Plaintiff begins claiming that she has fibromyalgia (R-525) although there is no such diagnosis or eighteen point check, as referenced by the ALJ and Claimant gives conflicting statements to her doctors as to whom is treating her for her fibromyalgia. (R-17). Furthermore, although claimant stated to her doctors at the M.D. Anderson Cancer Center that "she had a history of epilepsy" (R-525), there is no such diagnosis in the record. In fact, Claimant's own doctor first refers to it as a "possible seizure disorder" (R-443). Then, after Claimant fails to have a single seizure while off her medication and in the hospital, reports inconsistent symptomalogies and gave only vague descriptions of said seizures when specifically asked, Dr. Bashinski questions altogether whether Claimant is even having seizures. (R-459-460, 359, 361-362, 447-458, 344-351).

[5] Although this paragraph also deals with Plaintiff's claims of fibromyalgia, Claimant only mentions it in passing in her brief and does not claim that the ALJ erred in her determination that Claimant's alleged fibromyalgia was not severe. Thus, said fibromyalgia was not addressed by the court.

The ALJ correctly found that Plaintiff's claim of disabling hypothyroidism and post cancer therapy was not established by the record. The burden is on Claimant to present evidence of any claimed impairment and/or any combination of impairments. Herein, Claimant failed to produce medical evidence that indicated that her hypothyroidism and post-cancer treatment caused any limitations that precluded her from doing light level work, or that said conditions were ongoing and not controlled by treatment, medication and/or surgery. Therefore, this court finds that Claimant did not present any evidence that these alleged impairments combined would render her disabled or increase the severity of other impairments so that they met or equaled a listing, therefore, there was no error as to this claim.

## **CONCLUSION**

In reviewing the record, no evidence of error is found to substantiate the Claimant's contention that the ALJ improperly discredited Dr. Connally or failed to properly consider the combined effects of all of Claimant's limitations. This Court finds no error in the ALJ's finding that the Claimant had the RFC to perform light work. This Court further finds that the decision of the Commissioner is supported by substantial evidence. Furthermore, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, **IT IS ORDERED** that the decision of the Defendant Commissioner of Social Security the decision of the defendant Commissioner of Social Security be **AFFIRMED**.

THIS the 19th day of July, 2005.

S/ G. MALLON FAIRCLOTH<br>
UNITED STATES MAGISTRATE JUDGE

mZc